141 N.J. Super. 528 (1976)
358 A.2d 853
STATE OF NEW JERSEY, PLAINTIFF,
v.
CLEMENT NOLFI, DEFENDANT.
Superior Court of New Jersey, Hudson County Court, Law Division (Criminal).
April 8, 1976.
*530 Mr. John A. McLaughlin, First Assistant Prosecutor, for the Hudson Pretrial Intervention Program (Mr. James T. O'Halloran, Prosecutor of Hudson County, attorney).
Mr. William M. Schreiber for defendant (Mr. Kenneth R. Claudat, attorney).
WALSH, J.S.C., Temporarily Assigned.
This is a motion for leave to appeal to the Hudson County Court from an interlocutory order of the Union City Municipal Court denying defendant admission to the Hudson County Pretrial Intervention Program (hereinafter PTI), and is before this court pursuant to R. 3:24. Defendant, a New York resident, seeks to have the PTI policy of automatically excluding out-of-state residents declared unconstitutional, as it applies to him. Pursuant to the terms of R. 3:24, this court can simultaneously grant the motion and decide the appeal on the merits.
PTI[1] in Hudson County was developed and initiated in *531 late 1971, pursuant to R. 3:28.[2] The project was funded initially by grants from S.L.E.P.A. and the United States Department of Labor, and is under the authority of the Administrative *532 Office of the Courts. It was represented to the court at oral argument on this motion that the only funds presently available to support the program are county funds.
PTI is essentially a diversion mechanism, designed to process a defendant in a manner that will effectively deter criminal or penal behavior; that takes the defendant outside the traditional processes and leaves him without any criminal conviction. Of equal importance, it is also the stated purpose of PTI to assist in the relief of presently overburdened criminal calendars and to conserve the energies and resources of criminal justice agencies by removing defendants from trial calendars, as aforesaid, thereby permitting those agencies to concentrate on matters controllable only by traditional prosecution and sanctions.
There are many aspects to PTI, but we are concerned only with the "Selection Criteria", specifically, "Residence", cf. Proposal, at B-2.[3]
*533 New Jersey's PTI program is designed to deal with the problem of crime in New Jersey. Recognizing that because New Jersey is a "corridor state," residents of neighboring states frequently conduct criminal activity within its jurisdiction, residence should be a bar to admission only where a defendant resides such a distance from New Jersey as to bar effective counseling or supervisory procedures. Proposal at 71.
Defendant in this case is a resident of Brooklyn, New York, and is charged with a disorderly persons violation. At his initial appearance in municipal court defendant sought admission to PTI. He was never screened, but was automatically excluded solely because of the fact of his nonresidency. So far as this court is presently aware, defendant is, in all other respects, eligible for PTI, and would in fact be acceptable were he a New Jersey resident.
Defendant contends that his exclusion from the program based solely on his nonresident status is violative of his right to equal protection of the laws, under U.S. Const., Amend. XIV, and is also violative of U.S. Const., Art. IV, § 2, cl. 1 *534 (Privileges and Immunities). Defendant also contends that a fundamental right is involved and hence a compelling state interest must be shown for defendant to be excluded from PTI based solely on nonresidency. Because of the disposition of his other contentions, this last issue of the defendant need not be decided on this motion.[4]
In a memorandum from the PTI director to the court in connection with this matter it is admitted that "this class exclusion category does run counter to one of the basic principles of the State's PTI system: eligibility open to all motivated defendants regardless to [sic] charge or background with selections made with individual justifications * * *." (Emphasis in original).
The prosecutor argues that there is justification for the departure of the Hudson County PTI program from the aims and goals of the New Jersey state program. It is admitted that the Hudson PTI program is the model for the state PTI proposal, and both the state PTI proposal and the Hudson program are creatures of R. 3:28. The prosecutor contends, in effect, that despite those facts, the Hudson PTI program is free to follow its own path and set up its own criteria for admission because it was given R. 3:28 approval before the state PTI proposal was adopted. This argument overlooks the basic fact that R. 3:28 is the underlying authority *535 for the Hudson County PTI program, and the state PTI proposal was drawn to provide guidelines in implementing that rule. The rule and the proposal both originate from the Administrative Office of the Courts (an arm of the New Jersey Supreme Court) and are not to be lightly regarded. What the Hudson PTI program urges is that, because it was first in time, it is free to devise its own operating rules without regard to the state PTI proposal or, as the defendant argues on this motion, without regard to the United States Constitution.
The Hudson PTI program also cites an increased number of applications as a justification for certain automatic exclusionary categories. The resources of the program have remained constant and the prosecutor argues that, because the program must marshall its resources, it has a need to limit the number of eligible applicants. Defendant argues that, if a program cannot be sufficiently funded to enable it to operate in such a way as to pass United States constitutional muster, then it must be discontinued or, in the alternative, be properly funded to avoid United States constitutional infirmity.
The prosecutor also speaks of the lack of any national clearing center or statutory agreements with other states. The implication is that out-of-state participants must get their counseling from out-of-state agencies, because some of the agencies relied upon by the Hudson PTI program will not accept out-of-state applicants. The Hudson PTI program seeks to justify its own practices in reference to nonresidents by reliance on the practices of other agencies in this same regard. It was represented by defense counsel on argument of this motion that defendant is willing to come into New Jersey for whatever counseling may be deemed necessary if he is accepted.
Finally, the prosecutor points to extradition problems that could arise if an out-of-state applicant who is accepted into the Hudson County PTI fails to fulfill the program requirements, necessitating normal prosecution. This argument overlooks the fact that any extradition problem arises when bail *536 is set for a nonresident. The Hudson County PTI does nothing to exacerbate that situation which is a fact of legal life in criminal proceedings.
The Hudson PTI program offers further statistics that between March 1972 and December 1974, 36 out of 81 out-of-state applicants were rejected and 8 of those not rejected were terminated for lack of cooperation. These numbers do not impress the court as being significantly different from over-all statistics as to residents cited to this court during the argument of this motion. Also of note is that of the total number of nonresidents previously accepted there were, by the State's own empirical data, only three extradition problems.
The equal protection argument will be dealt with first by this court. The fact that PTI may be termed a privilege and not a right will not defeat an equal protection argument. Shapiro v. Thompson, 394 U.S. 618, 627, n. 6, 89 S.Ct. 1322, 22 L.Ed. 2d 600 (1969). The United States Supreme Court in that case held that classification based on residence must have a rational basis to withstand the requirements of the 14th Amendment Equal Protection Clause. The test to be applied is whether the challenged distinction rationally furthers some legitimate, articulated state purpose. Cf. McGinnis v. Royster, 410 U.S. 263, 270, 93 S.Ct. 1055, 35 L.Ed.2d 282 (1973); State in Interest of K.V.N., 116 N.J. Super. 580 (App. Div. 1971).
In the present case the effect of the residency requirement is to establish two classes, indistinguishable from each other, except that one is a group of residents and the other is a group of non-residents. Based on this lone distinction, admission to the Hudson County PTI is summarily denied. "When the law lays an unequal hand on those who have committed intrinsically the same quality of offense * * * it has made as an invidious a discrimination as if it had selected a particular [group] for oppressive treatment." Skinner v. Oklahoma, 316 U.S. 535, 541, 62 S.Ct. 1110, 1113, 86 L.Ed. 1655 (1942).
*537 The articulated purposes of PTI are rehabilitation of defendants and the clearing of overcrowded court calendars. PTI is designed as a kind of "creaming" process, skimming out of the traditional criminal process those who are most susceptible to rehabilitation and putting them into this program. Defendant clearly falls within that group of offenders at whom the PTI program is aimed. To deny him admission to the Hudson County PTI as was done instanter, is clearly a denial of equal protection of the laws under U.S. Const. Amend. XIV.
We deal next with the Art. IV, § 2, cl. 1 (Privileges and Immunities) argument pressed by defendant herein. That clause of the United States Constitution insures to a citizen of State A who ventures into State B the same privileges which the citizens of State B enjoy. Its purpose is the outlawing of statutory classifications based upon the fact of noncitizenship, unless there is something to indicate that noncitizens constitute a peculiar source of evil at which the statute is aimed. Toomer v. Witsell, 334 U.S. 385, 68 S.Ct. 1156, 92 L.Ed. 1460 (1948), reh. den. 335 U.S. 837, 69 S.Ct. 12, 93 L.Ed. 389. Residents of a state are citizens of that state, of course, Gassies v. Ballon, 31 U.S. [6 Pet.] 761, 8 L.Ed. 573, 761, and merely because a statute is couched in terms of residence, it is not ipso facto outside the scope of the Privileges and Immunities Clause, which speaks of citizens. Toomer, supra. Any law of a state which broadly discriminates against all nonresidents and which seeks to create an alienage which, although based on residence in form, is based upon citizenship in meaning and effect, discriminates against United States citizens who are not citizens of the state and unconstitutionally violates their privileges and immunities. Black v. McClung, 172 U.S. 239, 19 S.Ct. 165, 43 L.Ed. 432 (1898), reh. 176 U.S. 59, 20 S.Ct. 307, 44 L.Ed. 371 (1900). Such is the case in this instance.
It has been held that if a state seeks to grant special privileges to its own citizens which are of such a nature as to fall *538 within the purview of the privileges and immunities covered by U.S. Const., Art. IV, § 2, the constitutional provision will automatically secure to citizens of other states the special privileges so granted by the state to its own citizens. In re Johnson's Estate, 139 Cal. 532, 73 P. 424 (Sup. Ct. 1903); cf. also Duehay v. Acacia Mut. Life Ins. Co., 70 U.S. App. D.C. 245, 105 F.2d 768 at 776 (D.C. Cir.1939).
Johnson dealt with inheritance tax exemptions. The court noted that the provision was not restrictive, nor was it penal or destructive.
It seems, by implication, that a state may grant any privilege to its citizens that it sees fit, but those same rights, privileges and immunities are, by this clause, secured to all citizens of all other states when they come within the borders of that state. Thus, the Privileges and Immunities Clause becomes an express part of such laws and they need not so state in their terms.
In this case, the Hudson PTI grants to New Jersey residents charged with crimes in Hudson County the privilege of having the opportunity to escape the stigma of a criminal conviction. By operation of the Privileges and Immunities Clause the same opportunity must be given to a nonresident in the same situation, especially since the State has failed to show and this court is unable to discern a valid, substantial reason for the discrimination, beyond the mere fact that the defendant is a citizen of another state. Cf. Toomer, supra.
Based upon all of the foregoing this court finds that the denial of the application of defendant for admission to PTI solely because of his nonresidence violates his constitutional rights under U.S. Const., Amend. XIV (Equal Protection of the Laws) and U.S. Const., Art. IV, § 2, (Privileges and Immunities).
Accordingly this court further finds that automatic exclusion from PTI for nonresidence in this State is unreasonable and is hereby declared null and void.
NOTES
[1] Much of the factual information herein concerning PTI is taken from a report issued by the Administrative Office of the Courts, prepared by J. Gordon Zaloom, entitled: "Proposal for Statewide Implementation of a Uniform Program of Pretrial Intervention Under New Jersey Court Rule 3:28 (1974)" (hereinafter referred to as Proposal). Appendix B contains a 17-page summary of the Hudson County program, much of which is also incorporated herein.

To participate in PTI, an applicant needs committee approval, prosecutor approval and assignment judge approval after he applies. Of course, a defendant can decline to participate in the program after he has been accepted.
The procedure by which an accused goes through the PTI program is as follows: After initial application he is screened by PTI staff who determine the likelihood of rehabilitation. If accepted, his case is "frozen" for three months. At the end of that time there are three options: (1) a second three-month freeze, (2) dismissal; (3) normal prosecution. If (1) is used, then there is a second evaluation and either (2) or (3) is used.
[2] R. 3:28. Pretrial Intervention Programs

(a) In counties where a pretrial intervention program is approved by the Supreme Court for operation under this rule, the Assignment Judge shall designate a judge or judges to act on all matters pertaining to the program, with the exception, however, that the Assignment Judge shall him or herself act on all such matters involving treason, murder, kidnapping, manslaughter, sodomy, rape, armed robbery, or sale or dispensing of narcotic drugs by persons not drug-dependent.
(b) Where a defendant charged with a penal or criminal offense has been accepted by the program, the designated judge may, on the recommendation of the Trial Court Administrator for the county, the Chief Probation Officer for the county, or such other person approved by the Supreme Court as program director, and with the consent of the prosecuting attorney and the defendant, postpone all further proceedings against said defendant on such charges for a period not to exceed 3 months.
(c) At the conclusion of such 3-month period, the designated judge shall make one of the following dispositions:
(1) On recommendation of the program director and with the consent of the prosecuting attorney and the defendant, dismiss the complaint, indictment or accusation against the defendant, such a dismissal to be designated `matter adjusted  complaint (or indictment or accusation) dismissed'; or
(2) On recommendation of the program director and with the consent of the prosecuting attorney and the defendant, further postpone all proceedings against such defendant on such charges for an additional period not to exceed 3 months; or
(3) On the written recommendation of the program director or the prosecuting attorney or on the court's own motion order the prosecution of the defendant to proceed in the ordinary course. Where a recommendation for such an order is made by the program director or the prosecuting attorney, such person shall, before submitting such recommendation to the designated judge, provide the defendant or his or her attorney with a copy of such recommendation, shall advise the defendant of his or her opportunity to be heard thereon and the designated judge shall afford the defendant such a hearing.
(4) During the conduct of hearings subsequent to an order returning the defendant to prosecution in the ordinary course, no program records, investigative reports, reports made for a court or prosecuting attorney, or statements made by the defendant to program staff shall be admissible in evidence against such defendant. No such hearing with respect to such defendant shall be conducted by the designated judge who issued the order returning the defendant to prosecution in the ordinary course.
(d) Where proceedings have been postponed against a defendant for a second period of 3 months as provided in paragraph (c) (2), at the conclusion of such additional 3-month period the designated judge may not again postpone proceedings but shall make a disposition in accordance with paragraph (c) (1) or (3), provided however that in cases involving defendants who are dependent upon a controlled dangerous substance the designated judge may, upon recommendation of the program director and with the consent of the prosecuting attorney and the defendant, grant such further postponements as he or she deems necessary to make an informed decision, but the aggregate of postponement periods under this rule shall in no case exceed one year.
[3] The selection criteria were revised in May 1973 and were again revised in January 1975. These are the pre-1975 criteria:

A. AGE: Applicants must be above the age of 18.
B. RESIDENCE: Applicants must ordinarily be residents of Hudson County and the State of New Jersey. In occasional instances where residence outside the county or state will not bar effective counseling/supervision procedures, defendants from other areas may be accepted. [Emphasis supplied]
C. JURISDICTION: Only defendants charged with offenses in the criminal or municipal courts of Hudson County may be enrolled. However, the program will undertake to counsel/supervise defendants who are Hudson County residents charged in other jurisdictions so long as such defendants are enrolled in a similar program and such counseling/supervision plan has been approved by a R. 3:28 designated judge in the jurisdiction in which the defendant is charged.
The residence requirements were changed on January 1, 1975 by the director of PTI. There are several "Guidelines for Exclusion." As of that date, one of the guidelines for automatic exclusion is nonresidence in this state. Thus, a defendant is now excluded from participation if he is a nonresident, even if from New Jersey environs.
[4] The fundamental rights urged by defendant include the preservation of an untarnished criminal record and the right to avoid incarceration.

A fundamental right not urged by defendant, but mentioned in the prosecutor's brief, is the right to interstate travel. Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969). The prosecutor argues that one has no right to travel with an intent to violate the criminal laws. Clearly that is so. The prosecutor attempts to distinguish Shapiro by the fact that the regulations in that case would deter plaintiff from moving into the other state. What in fact does happen in the case at bar, however, is that defendant is compelled to move into this State to participate in PTI and thus, while not deciding this question, it is noted that this may be the other side of the Shapiro coin, and therefore could in all probability involve a fundamental constitutional right.